## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ELIZABETH BAHMANN,**

                **Plaintiff,**

**v.**                                  **Case No: 6:23-cv-1303-PGB-EJK**

**WELLS FARGO BANK, N.A.,**

                **Defendant.**

_____/

## <u>ORDER</u>

       This cause comes before the Court on Defendant Wells Fargo Bank, N.A.'s ("**Defendant Wells Fargo**") Motion to Dismiss (Doc. 7 (the "**Motion**")) and Plaintiff Elizabeth Bahmann's response in opposition (Doc. 13). Upon consideration, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

       This case flows from scammers withdrawing Plaintiff's funds from accounts held with Defendant Wells Fargo's commercial banking services. (Doc. 1-1). Plaintiff is a seventy-two year-old patron of Defendant Wells Fargo. (*Id.* pp. 3–7). From approximately April to August of 2022, Plaintiff received phone calls from scammers targeting elderly patrons such as herself. (*Id.* ¶¶ 6–7). These scammers

---

[1]    This account of the facts comes from the Plaintiff's Complaint. (Doc. 1-1). The Court accepts the well-pled factual allegations therein as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

lied, cajoled, and fraudulently induced her into both forfeiting substantial funds from her accounts with Defendant Wells Fargo and entering into dubious mortgage loan agreements. (*Id.* ¶¶ 7, 15, 20). Plaintiff alleges Defendant failed to effectively and adequately monitor and assess her accounts and contractual agreements during the period she was targeted by scammers. (*Id.* ¶¶ 9–11, 17, 21) On February 20, 2023, Plaintiff sent a letter to Defendant Wells Fargo informing it of her beliefs as to the foregoing. (*Id.* at pp. 3, 7–8).

Consequently, Plaintiff filed the Complaint in state court, averring in Count I that Defendant breached its fiduciary duty and in Count II that Defendant's negligently failed to "employ and/or effectuate methods, practices, and policies that would safeguard Plaintiff's finances from predatory financial practices and scams." (*Id.*). Defendant removed the case to this Court (Doc. 1) and now moves to dismiss the Complaint for failure to state a claim (Doc. 7). After Plaintiff's response in opposition (Doc. 13), this matter is ripe for review.[2]

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable

---

[2]   The Court struck Plaintiff's initial response as improper because it provided no citations to legal authority to support its arguments. (Docs. 8, 9). Plaintiff subsequently filed the instant response as directed. (Doc. 13).

inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The Court addresses the insufficiency of Plaintiff's breach of fiduciary duty claim and negligence claim in turn.

### A.   Breach of Fiduciary Duty

As part of stating a claim for breach of fiduciary duty, the plaintiff must establish the existence of a fiduciary relationship with the defendant. *Crusselle v. Mong*, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011). "Fiduciary relationships can be created expressly or impliedly under Florida law." *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 823 (11th Cir. 2015) (per curiam). An implied fiduciary relationship results when the particular circumstances of the parties' relationship create "a degree of dependency on one side and an undertaking on the

other side to protect and/or benefit the dependent party." *Masztal v. City of Miami*, 971 So. 2d 803, 809 (Fla. 3d DCA 2007).

Plaintiff primarily relies on cases which note that whether a fiduciary duty exists is a question of fact and so argues that the Court should allow the fiduciary duty claim to proceed to discovery. (Doc. 13, pp. 3–4). While generally true, Florida courts have also held some factual contexts do not ordinarily engender a fiduciary duty and, as such, discovery is unwarranted if the allegations fall into these buckets absent more. For example, "[u]nder Florida law, banks ordinarily do not owe fiduciary duties to their customers." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321 (S.D. Fla. 2012) (citing *Jaffe v. Bank of Am., N.A.*, 667 F.Supp.2d 1299, 1319 (S.D. Fla. 2009)), *aff'd sub nom. Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014); *see also Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 83 F.3d 1317, 1339 (11th Cir. 1996). While there is no bright line delineating which types of banking relationships are enough to create an implied fiduciary duty, Florida's courts and federal courts applying Florida law largely hold that parties to an arms-length business transaction do not enjoy a fiduciary relationship. *See, e.g.*, *BVS Acquisition Co. v. Brown*, 649 F. App'x 651, 664–65 (11th Cir. 2016) (per curiam) (finding no implied fiduciary relationship between investors and an investment manager due to arms-length business deal); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179–80 (M.D. Fla. 2005) (finding no implied fiduciary relationship between two companies which entered into business agreement); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 633

(Fla. 4th DCA 2005) (finding no implied fiduciary relationship between buyer and seller of laundromat equipment). This is because "there is no duty imposed on either party [in a business relationship] to protect or benefit the other." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003) (per curiam). What is more, a fiduciary duty cannot be unilaterally imposed by one placing trust or confidence in the other: there must be "some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991); *Jaffe*, 667 F. Supp. 2d at 1319 ("One may not . . . unilaterally impose a fiduciary relationship [on a lender] without a conscious assumption of such duties by [the lender] to be held liable as a fiduciary."); *see also Lamm* ("The fact Plaintiff unilaterally placed his trust in State Street to oversee the account investments is therefore insufficient to create a fiduciary relationship.").

In light of this Florida caselaw, Plaintiff puts forward insufficient factual allegation, beyond Plaintiff's advanced age, to create a plausible inference that Defendant Wells Fargo as a banking institution owed her a fiduciary duty. Plaintiff baldly alleges that, "Defendant [Wells Fargo] had a fiduciary duty to ensure that its partron's finances are safeguarded against predatory financial practices and scams." (Doc. 1-1, ¶ 16). This is entirely conclusory, and despite being given two bites at the apple to support it as a proposition of law, Plaintiff failed to do so. In particular, Plaintiff provides no caselaw which implies that Plaintiff's age by itself creates additional fiduciary duties for banking institutions such as Defendant

Wells Fargo. Because Plaintiff may be able to elaborate on these allegations in order to make an inference of such a fiduciary duty plausible, however, the Court will allow repleader.

### B. Negligence

To state a claim for negligence, a plaintiff must allege: (1) the defendant owed a duty of reasonable care to the plaintiff, (2) the defendant breached that duty, and (3) the plaintiff suffered damages as a result. *See Hasenfus v. Secord*, 962 F.2d 1556, 1559–60 (11th Cir. 1992); *Paterson v. Deeb*, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985). The determination of whether a duty exists is a question of law to be determined by the court. *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007); *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003) ("The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie."). Plaintiff alleges that Defendant Wells Fargo had a duty to protect her from fraud and exploitation from third-party scammers and that Defendant Wells Fargo breached that duty, causing Plaintiff loss. (Doc. 1-1, ¶¶ 8–21). However, Defendant Wells Fargo asserts that it owed no such duty to Plaintiff. (Doc. 7, pp. 3–7).

Generally, "there is no common law duty to prevent the misconduct of third persons." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) (citing RESTATEMENT (SECOND) OF TORTS § 315 (1965)); *Gross v. Family Servs. Agency*, 716 So. 2d 337, 338 (Fla. 4th DCA 1998). However, "[a] legal duty may arise from legislation, case law, or the general facts of the case." *Janis v. Pratt*

& *Whitney Can., Inc.*, 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005).  Of specific importance to this case, "Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because 'the standard of conduct or care embraced within such [a] legislative . . . measure [] represent[s] a standard of at least reasonable care which should be adhered to in the performance of any given activity.'"  *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (quoting *Dusine v. Golden Shores Convalescent Ctr., Inc.*, 249 So. 2d 40, 41–42 (Fla. 2d DCA 1971)).  Although proof of a statutory violation will not "overhaul the negligence cause of action" by converting it into a case sounding in negligence *per se*, Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach thereof.  *Id.*

To that end, Plaintiff attempts to establish a duty by arguing that Defendant Wells Fargo violated its duties under the Florida's Adult Protective Services Act (the "**Act**"), FLA. STAT. §§ 415.101–113.  (Doc. 13, pp. 2–3).  In relevant part, the Act requires any bank "who knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being . . . exploited" to report such exploitation to the Florida Department of Children and Families.  FLA. STAT. § 415.1034(1)(a).  The Act defines "vulnerable adult" as "a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging."  FLA. STAT. § 415.102(28).  The Florida Legislature has illuminated that a

primary purpose of the Act's mandatory reporting requirement is to "cause the protective services of the state to be brought to bear in an effort to prevent further . . . exploitation of vulnerable adults." *Id.* § 415.101(2).

Nowhere in the Complaint does Plaintiff allege that Defendant Wells Fargo had actual knowledge of the scams to which Plaintiff was subject while it was occurring. (*See* Doc. 1-1). Instead, Plaintiff conclusorily alleges that Defendant Wells Fargo "failed to employ and/or effectuate methods, practices, and policies that would safeguard Plaintiff's finances from predatory financial practices and scams." (*Id.* ¶ 21). Without more, this conclusory allegation does not trigger a plausible inference that Defendant Wells Fargo had "reasonable cause to suspect" that a vulnerable adult was being exploited as required to trigger the Act's statutory duties. FLA. STAT. § 415.1034(1)(a); *Arberman v. PNC Bank, Nat'l Ass'n*, No. 23-10182, 2023 WL 3910573 (11th Cir. June 9, 2023) (affirming dismissal of a negligence claim against a bank flowing from third-party scammer's fraudulent access to a bank account due to lack of duty to an elderly seventy-one year-old plaintiff because the plaintiff failed to adequately allege the bank had actual knowledge or reasonable cause to suspect the exploitation was occurring). Plaintiff's pleading contrasts markedly with *Ginder v. Bank of Am. Corp.*, No. 6:14-cv-1271, 2015 WL 898595, at *1–4 (M.D. Fla. Mar. 3, 2015) where, for example, the Court found that in addition to failing to investigate at least twenty instances of fraud involving the eighty-one year-old plaintiff there, the bank eventually had actual knowledge of exploitative conduct by third-parties and yet still failed to

properly safeguard the plaintiff and her funds. Consequently, Plaintiff fails to state a claim for negligence. Again, more detailed allegations may push Plaintiff's claim over the line into the realm of plausibility, so the Court will allow repleader.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1.   Defendant's Motion to Dismiss (Doc. 7) is **GRANTED IN PART and DENIED IN PART**;

2.   The Complaint (Doc. 1-1) is **DISMISSED WITHOUT PREJUDICE**; and

3.   On or before September 15, 2023, Plaintiff may file an amended complaint provided she can do so consistent with the directives of this Order and Rule 11. Failure to timely file may result in dismissal of the case with prejudice.

**DONE AND ORDERED** in Orlando, Florida on August 29, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties